DS:SLT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

BAJRAM LAJQI,
    also known as "Brian," and
CARLOS ALVAREZ,

              Defendants.

C O M P L A I N T

(18 U.S.C. § 924(c)(1)(A)(iii);
and 21 U.S.C. § 846)

- - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      NICHOLAS DAVELLA, being duly sworn, deposes and says that he is a Detective with the New York Police Department ("NYPD") and cross-designated as a Task Force Officer of the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

      Upon information and belief, in or about and between January 2010 and June 2011, within the Eastern District of New York and elsewhere, the defendants BAJRAM LAJQI, also known as "Brian," and CARLOS ALVAREZ, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled

substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(D); Title 18, United States Code, Sections 3551 et seq.)

Upon information and belief, on or about June 4, 2011, within the Eastern District of New York and elsewhere, the defendants BAJRAM LAJQI, also known as "Brian," and CARLOS ALVAREZ, did knowingly and intentionally use and carry one or more firearms during and in relation to a drug trafficking crime and did knowingly and intentionally possess one or more firearms in furtherance of said drug trafficking crime, which firearms were brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  On June 4, 2011, at approximately 1:40 a.m., NYPD officers from the 45th Precinct responded to a 911 call reporting shots fired in the vicinity of Tosca Cafe located at 4038 East Tremont Avenue, Bronx, New York. Several minutes later, a male subsequently identified as the complaining victim (the "Victim")

---

[1] The information set forth below is based upon my personal involvement in this investigation, as well as conversations with other law enforcement officers and my review of records and reports. In addition, because this affidavit is being submitted for the limited purpose of establishing probable cause to charge LAJQI and ALVAREZ, I have not set forth every fact learned during the course of this investigation.

drove himself to the emergency room at a hospital in the Bronx seeking treatment for multiple gunshot wounds.

2. Emergency room doctors determined that the Victim suffered a gunshot wound to his left thigh and another gunshot wound to his right thigh. Exit wounds on both legs indicated that the bullets passed through the Victim's legs and no bullets were recovered from the Victim's body. NYPD detectives and other law enforcement officers subsequently examined the crime scene and located a single deformed low-caliber bullet on the street where the shooting occurred.

3. NYPD detectives subsequently obtained video recordings from more than ten surveillance cameras that were situated both inside Tosca Cafe and at various exterior locations on the surrounding streets. I have reviewed the video footage from these surveillance cameras and am familiar with the contents of said recordings. A review of the video surveillance revealed that the defendants BAJRAM LAJQI and CARLOS ALVAREZ stalked the Victim for more than two hours inside Tosca Café before striking the Victim, chasing the Victim out into the street and then shooting the Victim multiple times.

4. In sum and substance and part, the various surveillance camera recordings revealed that the defendants BAJRAM LAJQI and CARLOS ALVAREZ entered Tosca Café at approximately 11:30 p.m. on June 3, 2011. The faces of both defendants were clearly visible and identifiable from the video. The defendants proceeded to look around the Café until they saw

the Victim. Over the course of the next hour and fifty minutes, the defendants continued to watch the Victim intently and repeatedly followed him as he moved around the bar, in what appeared to be an effort to keep the Victim in sight. When the Victim got up from his seat to go into the bathroom, the defendants also got up from their seats and then proceeded to walk near the bathroom door. When the Victim exited the bathroom and returned to his seat, the video clearly depicts the defendant CARLOS ALVAREZ watching the Victim intently as he cut across the room.

     5. At approximately 1:27 a.m., the surveillance video shows the Victim exit the Café but loiter in the street outside for several minutes. BAJRAM LAJQI walked to the door of the Café and continued to watch the Victim from inside the door. When the Victim returned to the bar, the defendant BAJRAM LAJQI followed him and then sat directly behind the Victim. The defendant CARLOS ALVAREZ walked near the Victim and also sat down behind the victim next to BAJRAM LAJQI. LAJQI is then seen speaking briefly with ALVAREZ before getting up and walking towards the Victim. As soon as he got close to the Victim, BAJRAM LAJQI punched the Victim in the face, causing the victim to fall to the ground.

     6. At this point, the Victim appeared to get ready to fight back, but then saw LAJQI pull out a gun and the Victim started to run towards the door of the Café. Both BAJRAM LAJQI and CARLOS ALVAREZ chased after the Victim and followed him into

the street.  The defendants both continued to chase the Victim as he ran up Tremont Avenue away from the Café.  CARLOS ALVAREZ appeared to be carrying a firearm in his right hand as he chased the Victim down the street.  Video surveillance cameras overlooking the street show BAJRAM LAJQI catching up to the Victim, pointing a firearm and firing multiple shots at the Victim in the street in front of Tosca Café.  The Victim appears to have been hit by LAJQI's shots, but manages to scramble to his feet and run back the other way towards Miles Avenue.  CARLOS ALVAREZ continued to chase the Victim up the street while LAJQI fled the scene by running down Tremont Avenue, passing right by a surveillance camera in the process.

       7.   During the course of the next several days, NYPD detectives and other law enforcement officers, including agents from the DEA Organized Crime and Drug Enforcement Strike Force, conducted multiple interviews of the Victim, eyewitnesses and other individuals with knowledge of the circumstances of the shooting.  In particular, agents received information from a confidential source whose information has proven to be reliable and has been corroborated by independent evidence (the "CS").  The CS stated, in sum and substance, that in the late evening/early morning of June 4, 2011, the Victim was at Tosca Café socializing with several associates when he was accosted by the defendants BAJRAM LAJQI and CARLOS ALVAREZ.  Specifically, the CS stated that while the Victim was conversing with another person, BAJRAM LAJQI came up to the Victim and struck the Victim

in the face, causing the Victim to fall to the floor. While the Victim was attempting to get up off the floor, BAJRAM LAJQI pulled a revolver out of his pocket. At this time, one of the bouncers grabbed LAJQI in an attempt to prevent him from shooting the Victim. LAJQI then pointed the gun at the bouncer, who promptly backed away. Before LAJQI could turn back to the Victim and fire his gun, the Victim was able to fight through the crowd and run out the front door.

8. According to the CS, both LAJQI and ALVAREZ chased after the Victim down the street. Across the street from Tosca, LAJQI caught up to the Victim and fired two shots, both of which hit the Victim. The Victim was nevertheless able to get up and limp away, and a third shot from LAJQI missed the Victim. The Victim was then able to escape LAJQI and ALVAREZ, who fled the scene. After the shooting, the Victim drove himself to the hospital.

9. The CS further stated that the Victim and BAJRAM LAJQI were partners in a marijuana trafficking organization that arranged for the shipment of high-grade hydroponic marijuana from Canada to the New York area for distribution. According to the CS, the marijuana was distributed to customers throughout Brooklyn, Queens, Long Island, the Bronx and Manhattan. The CS stated that ALVAREZ worked for the organization distributing marijuana and also acted as BAJRAM LAJQI's "henchman" and enforcer.

10. The CS further explained that the shooting occurred because the Victim had been feuding with LAJQI over a previous drug transaction. Specifically, LAJQI and the Victim had brought a load of marijuana into New York from Canada sometime last year. LAJQI distributed the marijuana on consignment but was late making payment to the source of supply in Canada. As a result, the Victim confronted LAJQI and reported LAJQI's slow response to the Canadian source of supply. The dispute continued for many months and threats of violence were exchanged by both sides. At some point during the dispute, LAJQI accused the Victim of being an informant for the police.

11. The CS' description of the shooting is consistent with the video surveillance discussed above, including details regarding the specific clothing worn by the defendants BAJRAM LAJQI and CARLOS ALVAREZ. For example, the CS stated that LAJQI was wearing a beret-style hat, which is clearly visible on the surveillance video.

12. In addition, BAJRAM LAJQI, CARLOS ALVAREZ and the Victim all have previous arrests and convictions for various offenses, including marijuana trafficking. CARLOS ALVAREZ has a 2000 conviction for criminal possession of marijuana, a 2005 conviction for criminal sale of marijuana, a 2007 conviction for criminal possession of marijuana, a 2008 conviction for criminal possession of a controlled substance (marijuana) and a 2009 conviction for criminal possession of marijuana. The victim has a 2009 arrest for attempted possession of marijuana with intent

to sell, a Class E felony.  BAJRAM LAJQI has a 1994 arrest for criminal possession of a weapon, a 1995 arrest for criminal possession of a firearm, a 1996 arrest for criminal possession of a controlled substance with intent to sell, a 1999 arrest for breaking and entering with intent to commit a felony and a 2000 arrest for attempted murder (which involved another shooting).

   13.  On June 8, 2011, agents executed a search warrant on the defendant BAJRAM LAJQI's home residence.  During the search, agents found a bulletproof vest and a heat-sealing machine consistent with those typically used by marijuana distributors to package drugs and drug proceeds for transportation.  Agents also discovered a handwritten drug ledger that appears to contain the names of drug customers and the amount of narcotics purchased.

   WHEREFORE, it is requested that the defendants BAJRAM LAJQI and CARLOS ALVAREZ be dealt with according to law.

              _____
               NICHOLAS DAVELLA
               Detective
               New York Police Department

Sworn to before me this
9th day of June, 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK